## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

Alma Lancaster, individually and on behalf of
all others similarly situated,

                    Plaintiff,


        - against -                                        Class Action Complaint

                                                              1:22-cv-1280 (BKS/ML)

American Textile Company, Incorporated,

                    Defendant                          Jury Trial Demanded

        Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which

are based on personal knowledge:


        1.      American Textile Company, Incorporated ("Defendant") manufactures, markets,

labels and sells sheet sets represented as having a thread count of 1250 under the Sealy brand

("Product").



## I.     HIGHER THREAD COUNTS ASSOCIATED WITH HIGHER QUALITY

2.     Thread count is used by consumers purchasing bedding as an indicator of fabric quality, with higher thread counts able to provide greater comfort, durability, and longevity relative to lower thread counts.

3.     Consumers rely on the represented thread count as a gauge of product quality.[1]

4.     Surveys confirm that consumers are willing to, and do pay, more for higher thread count sheets than lower thread count sheets.

5.     For instance, a single-ply 300-count costs $55 a set, while a 600 thread-count sheets are $180 a set.

6.     One informal survey of the prices of cotton king-size sheet sets at online retailers in 2016 confirmed that as thread count increased, so did the prices.

## II.    THREAD COUNT CALCULATIONS

7.     The common or standard practice in the United States bedding industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction).

8.     Common or standard practice counts each yarn as one thread, regardless of whether the yarn was a single-ply or multi-ply yarn.

9.     The American Society for Testing and Materials' ("ASTM") is a global standards organization that develops technical standards for a wide range of industries.

10.    ASTM Standard 3775 covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric.[2]

---

[1] ABC News, Are Shoppers Short-Sheeted by Thread Count?, Jan. 2006 (noting that customers "rely" on thread count as an important factor while shopping).
[2] Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabrics; see also ASTM Designation: D3775-12.

11.   This Standard uses several industry-specific terms, defined below:[3]

| | |
|---|---|
| count | *n−in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension, and is free of folds and wrinkles. |
| end | *n−in fabric*, an individual warp yarn (single or ply) or cord. |
| filling | *n−*yarn running from selvage to selvage at right angles to the warp in a woven fabric. |
| pick | *n−*an individual filling yarn. |
| pick count | *n−in woven fabrics*, the number of filling yarns per unit fabric length. |

12.   The method for determining thread count requires "Count[ing] individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components."[4]

13.   When two yarns "are laid-in together and parallel," each yarn is required to be counted separately, "as a single unit, regardless of whether it is comprised of single or plied components."[5]

14.   However, not all manufacturers and sellers of sheets use this industry standard method for calculating thread counts.

15.   The National Textiles Association ("NTA") and the Federal Trade Commission ("FTC") recognized that counting plies in plied yarns individually inflates the thread count several times above what it would be if the traditional, industry standard method were used.

16.   The FTC stated that a result of this practice is that consumers are unable to accurately compare products, because their "thread counts that may have been calculated in two dramatically different ways." FTC Letter to National Textile Association, August 2, 2005.

17.   The FTC stated that "[C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies

---

[3] ASTM D 123-03, Standard Terminology Relating to Textiles.
[4] ASTM Designation: D3775-12 at 9.1.1.
[5] ASTM Designation: D3775-12 at 9.1.2.

within the yarn."

18.  The FTC provided an example of a non-deceptive way to inform consumers of the thread count and the yarn ply, such as "300 thread count, 2 ply yarn," instead of "600 thread count," which "would likely mislead consumers about the quality of the product being purchased."

19.  Deviation from industry standards has also drawn criticism from the American Textile Manufacturer's Institute ("ATMI").

20.  Writing to the FTC, ATMI described how "extremely high [thread] counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric. ATMI Letter to FTC, January 31, 2002.

21.  By "labeling products based on counting each individual yarn in plies," consumers' purchasing decisions are "based on false and misleading information."

22.  In its reply to ATMI, the FTC agreed that it would review thread count claims which counted yarns within a ply as individual yarns in light of the significant weight afforded to the ASTM standards. FTC Letter to ATMI, March 18, 2002.

23.  The FTC concluded by noting that material claims about a product must be supported by a "reasonable basis," and was skeptical that counting individual yarns within a ply to arrive at a total thread count met this criteria.

## III.   THREAD COUNT FOR PRODUCT IS FALSE AND MISLEADING

24.  The representation that the Product's thread count is 1250 is false and misleading.

25.  Laboratory analysis shows it has 57 warp yarns and 166 weft yarns per inch, a total thread count of 223. Exhibit A, TexTest Report 13163.

| SAMPLE IDENTIFICATION: | SAMPLE #1    SEALY PREMIUM COMFORT | 1250 Thread Count |
| | KING SHEET SUPERIOR MOISTURE WICKING | |
| | FABRIC: 48% POLYESTER/44% COTTON/8% MODAL   Made in India | |
| | RN 17119   0 2241534251 3 | |

END & PICK COUNT
ASTM D 3775

| | |
| --- | --- |
| Warp | 57 |
| Filling | 166 |
| Total Thread Count | 223 |

A deceptive count of each filament of each warp yarn
each filament yarn has 19 filaments

$$57 \times 19 = 1083$$
$$+ \quad 166$$
Total Count    1249

26.    However, the 19 individual filaments in each warp yarn were counted as separate yarns, which is scientifically wrong based on the definition of fiber and yarn structures.

27.    Defendant calculated 1250 for the thread count by multiplying the number of warp yarns, 57, by the filaments in each warp yarn, 19, to reach 1083, and added 166 weft yarns, for a total of 1249.

28.    By counting the plied yarns individually, the Product's thread count is inflated by several times over what it would be if industry standard methods were used.

29.    The result was that the Product was of lower quality, softness, comfort, durability, and longevity than they otherwise would if they were the represented thread count and quality as stated on the labeling.

## IV.   CONCLUSION

30.    Defendant makes other representations and omissions with respect to the Product which are false and misleading.

31.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $54.99 for the king or queen size sheet set,

excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

32.   Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

33.   The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

34.   Plaintiff is a citizen of New York.

35.   Defendant is a Pennsylvania corporation with a principal place of business in Pennsylvania.

36.   The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

37.   The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, from department stores, home furnishing stores, warehouse club stores, big box stores, and online in the States Plaintiff seeks to represent.

38.   Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Ulster County, including Plaintiff's purchase, use, reliance on the identified representations and/or awareness these were false and misleading.

Parties

39.   Plaintiff Alma Lancaster is a citizen of Wallkill, Ulster County, New York.

40.   Defendant American Textile Company, Incorporated is a Pennsylvania corporation with a principal place of business in Duquesne, Allegheny County, Pennsylvania.

6

41. Defendant is one of the largest textile manufacturers in the United States.

42. Defendant manufacturers bedding products for dozens of brands, including Sealy.

43. Sealy is known worldwide for its premium mattresses.

44. Consumers seeing Sealy sheets will expect similarly high levels of quality based on Sealy's reputation.

45. Plaintiff purchased the Product at stores including Big Lots, 102 N Plank Rd, Newburgh, New York 12550, between January 2021 and January 2022, among other times.

46. Plaintiff read "1250 Thread Count" on the label.

47. Plaintiff believed and expected the thread count promised on the label was the thread count of the Product, and that this number was based on an industry standard calculation, instead of through methods which result in inflated thread counts because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

48. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

49. Plaintiff bought the Product at or exceeding the above-referenced price.

50. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it.

<u>Class Allegations</u>

51.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

**New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

**Consumer Fraud Multi-State Class**: All persons in the States of Texas, South Dakota, Alaska, Virginia, North Carolina, and South Carolina who purchased the Product during the statutes of limitations for each cause of action alleged.

52.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

53.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

54.    Plaintiff is an adequate representative because her interests do not conflict with other members.

55.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

56.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

57.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>

58.    Plaintiff incorporates by reference all preceding paragraphs.

59.    Plaintiff believed the thread count promised on the label was the thread count of the

Product, and that this number was based on an industry standard calculation, instead of through methods which result in inflated thread counts.

60.    Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

61.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

62.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

63.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>
<u>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

64.    The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that the thread count promised on the label was the thread count of the Product, and that this number was based on an industry standard calculation, instead of through methods which result in inflated thread counts.

65.    Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

66.    Defendant knew the product attributes that potential customers like Plaintiff were

9

seeking and developed its marketing and labeling to directly meet those needs and desires.

67.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that the thread count promised on the label was the thread count of the Product, and that this number was based on an industry standard calculation, instead of through methods which result in inflated thread counts.

68.     Defendant's representations affirmed and promised that the thread count promised on the label was the thread count of the Product, and that this number was based on an industry standard calculation, instead of through methods which result in inflated thread counts.

69.     Defendant described the Product so Plaintiff believed the thread count promised on the label was based on an objective industry standard calculation, instead of through methods which result in inflated thread counts, which became part of the basis of the bargain that it would conform to its affirmations and promises.

70.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

71.     This duty is based on its outsized role in the market for this type of Product, selling under a trusted brand in the area of bedding and sleep products.

72.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

73.     Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

74.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

75.     The Product did not conform to its affirmations of fact and promises due to

Defendant's actions.

76. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it lacked the softness and durability of sheets with a thread count of 1250.

77. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected sheets that were softer and more durable based on the high thread count, and she relied on Defendant's skill and judgment to select or furnish such a suitable product, based on qualities and attributes such as comfort and softness.

<u>Fraud</u>

78. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that the thread count promised on the label was the thread count of the Product, and that this number was based on an industry standard calculation, instead of through methods which result in inflated thread counts.

79. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

<u>Unjust Enrichment</u>

80. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   December 1, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com