**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ALMA LANCASTER, individually and on behalf of all
others similarly situated,

                              Plaintiff,                         1:22-cv-01280 (BKS/ML)

v.

AMERICAN TEXTILE COMPANY, INCORPORATED,

                              Defendant.

**Appearances:**

*For Plaintiff:*
Spencer Sheehan
Katherine Lalor
Sheehan & Associates, P.C.
60 Cuttermill Road, Suite 412
Great Neck, New York 11021

*For Defendant:*
Michael Duvall
Charles Darrell
Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020

Michael E. Harris
Dentons US LLP
211 North Broadway, Suite 3000
St. Louis, Missouri 63102

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

            Plaintiff Alma Lancaster brings this putative class action against Defendant American

Textile Company, Incorporated in connection with Defendant's manufacturing, marketing,

labeling, and sale of Sealy "1250 Thread Count Sheet Sets." (Dkt. No. 1). Plaintiff asserts, individually, and on behalf of a "New York Class" and a "Consumer Fraud Multi-State Class," claims under New York General Business Law, N.Y. Gen. Bus. Law ("GBL") §§ 349, 350, and the "Consumer Fraud Acts" of Texas, South Dakota, Alaska, Virginia, North Carolina, and South Carolina; claims for breaches of express warranty and implied warranties of merchantability and fitness for a particular purpose, and under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq., and claims for fraud and unjust enrichment. (Dkt. No. 1, at 8–11). Presently before the Court is Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 10). The motion is fully briefed. (Dkt. Nos. 14, 16–19). For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

## II.    FACTS[1]

### A.    The Parties and the Sealy "1250 Thread Count Sheet Set"

Defendant is a Pennsylvania corporation with a principal place of business in Duquesne, Pennsylvania. (Dkt. No. 1, ¶ 40). "Defendant is one of the largest textile manufacturers in the United States" and "manufactures bedding products for dozens of brands, including Sealy."[2] (*Id.* ¶¶ 41–42). Defendant "manufactures, markets, labels and sells sheet sets represented as having a thread count of 1250 under the Sealy brand." (*Id.* ¶ 1); *see* Figure 1.

Figure 1: Image of Sealy "1250 Thread Count Sheet Set" Label

---

[1] These facts are drawn from the Complaint. (Dkt. No. 1.) The Court assumes the truth of and draws reasonable inferences from the well-pleaded factual allegations, *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] "Sealy is known worldwide for its premium mattresses." (*Id.* ¶ 43).



(Dkt. No. 1, ¶ 1). King or queen size "1250 thread count" Sealy sheet sets are sold "at a premium

price, approximately . . . no less than $54.99" "from department stores, home furnishing stores,

warehouse club stores, big box stores, and online in" New York, Texas, South Dakota, Alaska,

Virginia, North Carolina, and South Carolina. (*Id.* ¶¶ 31, 37, 51). However, "[l]aboratory

analysis"[3] shows that the "1250 Thread Count" sheets are comprised of "57 warp yarns and 166

weft yarns per inch, a total thread count of 223."[4] (*Id.* ¶ 25). "Defendant calculated 1250 for the

---

[3] Plaintiff does not attach the "laboratory analysis" to the Complaint or provide any facts regarding this analysis. The Court notes that Attorney Spencer Sheehan, who represents Plaintiff in the present action, has been held in contempt for filing a complaint with vague and conclusory laboratory testing allegations. *Brownell v. Starbucks Coffee Co.*, No. 22-cv-1199, 2023 WL 9053058, at *1, 9, 2023 U.S. Dist. LEXIS 231526, at *1–2, 27–28 (N.D.N.Y. Nov. 30, 2023) (alleging that "[r]ecent reports based on laboratory analysis" showed that the defendant coffee company "charged a premium price" for "100% Arabica Coffee," when the coffee in fact contained "added potassium"). After a hearing, the court found that Attorney Sheehan acted in bad faith by filing the "complaint without any studies, relevant caselaw, or reasonable interpretations of the wording on the Product label to support the allegations contained within." *Id.*, 2023 WL 9053058, at *9, 2023 U.S. Dist. LEXIS 231526, at *27–28. Unlike *Brownell*, where the complaint did not "identify the reports or the results of that analysis," 2023 WL 9053058, at *1, 2023 U.S. Dist. LEXIS 231526, at *1–2, here the Complaint identifies the report and the results, (Dkt. No. 1, ¶ 25 (citing "TexTest Report 13163")). However, despite indicating that this report was attached to the Complaint as "Exhibit A," Plaintiff failed to attach the report.

[4] The Complaint states that "warp" indicates threads in the "vertical direction" and that "filling" indicates threads in the "horizontal direction" but does not define "weft." (Dkt. No. 1, ¶ 7).

thread count by multiplying the number of warp yarns, 57, by the number of filaments in each warp yarn, 19, to reach 1083, and added 166 weft yarns for a total of 1249." (*Id.* ¶ 25–27 (explaining that 57 (warp yarns) x 19 (filaments in each warp yarn) = 1083 + 166 (weft yarns) = 1249)).

Plaintiff, a citizen of Wallkill, Ulster County, New York, (*id.* ¶ 39), purchased the "1250 thread count" sheets at "stores including Big Lots" in Newburgh, New York "between January 2021 and January 2022, among other times," (*id.* ¶ 45). "Plaintiff read '1250 Thread Count' on the label" and "believed and expected that the thread count promised on the label was the thread count of the [sheet set], and that this number was based on an industry standard calculation, instead of through methods which result in inflated thread counts because that is what the representations and omissions said and implied, on the front label and the absence of any reference of statement elsewhere on the [sheet set]." (*Id.* ¶¶ 46–47). Plaintiff also "relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, an/or images on the [sheet set], on the labeling, statements, omissions, claims . . . and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the [sheet set] and separately, through in-store, digital, audio, and print marketing." (*Id.* ¶ 48). "Plaintiff paid more for the [sheet set] than she would have had she known the representations were false and misleading, or would not have purchased it." (*Id.* ¶ 50).

Plaintiff proposes the following classes:

> New York Class: All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> Consumer Fraud Multi-State Class: All persons in the States of Texas, South Dakota, Alaska, Virginia, North Carolina, and South Carolina who purchased the Product during the statutes of limitations for each cause of action alleged.

(*Id.* ¶ 51).

**B.     Thread Counts**

According to a January 2006 article by ABC News, "[c]onsumers rely on the represented thread count as a gauge of product quality." (Dkt. No. 1, ¶ 3 & n.1). Plaintiff asserts that "[s]urveys confirm that consumers are willing to, and do pay, more for higher thread count sheets than lower count thread sheets." (*Id.* ¶ 4). "For instance, a single-ply 300-count [sic] costs $55 a set, while a 600 thread-count sheets [sic] are $180 a set." (*Id.* ¶ 5). "One informal survey of the prices of cotton king-size sheet sets at online retailers in 2016 confirmed that as thread count increased, so did prices." (*Id.* ¶ 6).

**1.     American Society for Testing and Materials**

The American Society for Testing and Materials ("ASTM") "is a global standards organization that develops technical standards for a wide range of industries." (Dkt. No. 1, ¶ 9). "ASTM Standard 3775 covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric." (*Id.* ¶ 10). "ASTM D 123-03, Standard Terminology Relating to Textiles" defines "several industry-specific terms" as follows:

| | |
|---|---|
| count | *n−in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension, and is free of folds and wrinkles. |
| end | *n−in fabric*, an individual warp yarn (single or ply) or cord. |
| filling | *n−yarn* running from selvage to selvage at right angles to the warp in a woven fabric. |
| pick | *n−*an individual filling yarn. |
| pick count | *n−in woven fabrics*, the number of filling yarns per unit fabric length. |

(*Id.* ¶ 11). Per "ASTM Designation: D3775-12 at 9.1.1.": "The method for determining thread count requires 'Count[ing] individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components.'" (*Id.* ¶ 12 & n.4 (alteration in original)). Per "ASTM Designation: D3775-12 at 9.1.2.": "When two yarns 'are laid-in together and parallel,' each yarn is required to be counted separately, 'as a single unit, regardless of whether it is comprised of single or plied components.'" (*Id.* ¶ 13 & n.5).

### 2.    Letter from Federal Trade Commission to National Textiles Association

In a letter to the National Textiles Association ("NTA") dated August 2, 2005, the Federal Trade Commission ("FTC") stated that: "counting plies in plied yarns individually inflates the thread count several times above what it would be if the traditional, industry standard method were used"; as "a result of this practice . . . consumers are unable to accurately compare products, because their 'thread counts that may have been calculated in two dramatically different ways'"; and "[c]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn." (Dkt. No. 1, ¶¶ 15–17). In addition, the "FTC provided an example of a non-deceptive way to inform consumers of the thread count and the yarn ply, such as '300 thread count, 2 ply yarn,' instead of '600 thread count,' which 'would likely mislead consumers about the quality of the product being purchased.'" (*Id.* ¶ 18).

### 3.    Letters Between American Textile Manufacturer's Institute and FTC

In a letter to the FTC dated January 31, 2002, the American Textile Manufacturer's Institute ("AMTI") "described how extremely high [thread] counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric." (Dkt. No. 1, ¶ 20) (quotation mark omitted). The AMTI stated that "[b]y

'labeling products based on counting each individual yarn in plies,' consumers' purchasing decisions are 'based on false and misleading information.'" (*Id.* ¶ 21).

In a letter to the ATMI dated March 18, 2002, the FTC "agreed that it would review thread count claims which counted yarns within a ply as individual yarns in light of the significant weight afforded to the ASTM standards." (*Id.* ¶ 22). "The FTC concluded by noting that material claims about a product must be supported by a 'reasonable basis,' and was skeptical that counting individual yarns within a ply to arrive at a total thread count met this criteria." (*Id.* ¶ 23).

## III. STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations

sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S.

at 555). A court must accept as true all factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir.

2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## IV.     MOTION TO DISMISS – Fed. R. Civ. P. 12(b)(1)

### A.     Standing

Defendant first argues that Plaintiff lacks standing to assert claims under the consumer

protection laws of other states if their alleged purchases occurred only in their home state," (Dkt.

No. 10-1, at 19). However, the question of "whether a plaintiff can bring a class action under the

state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of

standing under Article III." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 96

(2d Cir. 2018). Thus, as Plaintiff's "individual standing to sue is not in doubt," the Court need

not consider this argument further at present. *Id.* Defendant's motion to dismiss the claims under

the consumer fraud actions of Texas, South Dakota, Alaska, Virginia, North Carolina, and South

Carolina for lack of standing is denied.

### B.     MMWA

Defendant has not raised the issue of the Court's subject matter jurisdiction to hear

Plaintiff's MMWA claim. However, "in our federal system of limited jurisdiction . . . the court

sua sponte, at any stage of the proceedings, may raise the question of whether the court has

subject matter jurisdiction." *United Food & Com. Workers Union v. CenterMark Props. Meriden*

*Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (internal quotation marks and citation omitted); *see*

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978))). The MMWA requires that class actions include one hundred or more named plaintiffs, and the instant action has only one named plaintiff. 15 U.S.C. § 2310(d)(3)(C); (*see* Dkt. No. 1). The MMWA states:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[:] (A) in any court of competent jurisdiction in any State or the District of Columbia; or[] (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

15 U.S.C. § 2310(d)(1). This provision is limited by § 2310(d)(3), which states, in relevant part, that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(C).

The Class Action Fairness Act, meanwhile, provides district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A).

The question, then, is "whether the MMWA's specific jurisdictional limitations trump CAFA's authorization of federal jurisdiction over otherwise qualifying class actions." *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015).

In *Ghaznavi v. De Longhi America, Inc.*, United States District Judge Kathleen Polk Failla surveyed existing caselaw and concluded that "CAFA does not provide a workaround to the MMWA's federal jurisdictional requirements." No. 22-cv-1871, 2023 WL 4931610, at *9–10, 2023 U.S. Dist. LEXIS 133730, at *24, 28 (S.D.N.Y. Aug. 2, 2023). Judge Failla also analyzed the "text, structure, and history" of the two statutes and concluded that "the MMWA is the exclusive source of federal jurisdiction over federal warranty claims." *Id.*, 2023 WL 4931610, at *9, 2023 U.S. Dist. LEXIS 133730, at *25. This conclusion is further supported by decisions of the Third and Ninth Circuits. *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 182–83 (3d Cir. 2023); *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1032–35 (9th Cir. 2020). In *Smith v. Adidas America, Inc.*, No. 22-cv-788, 2023 WL 5672576, at *4, 2023 U.S. Dist. LEXIS 155009 *12  (N.D.N.Y. Sept. 1, 2023), this Court joined Judge Failla—along with the Third and Ninth Circuits—in concluding that the "CAFA does not displace the MMWA's stringent federal jurisdictional requirements." (quoting *Ghaznavi*, 2023 WL 4931610, at *10, 2023 U.S. Dist. LEXIS 133730, at *29). However, the parties did not have the benefit of the Court's decision in *Smith* because it was issued on September 1, 2023, and the parties herein completed their briefing on May 8, 2023. (*See* Dkt. No. 16).

Here, because there is only one named plaintiff, it appears the Court lacks jurisdiction to hear Plaintiff's MMWA claim. Plaintiff is nevertheless entitled to be heard prior to dismissal. Accordingly, the Court will permit the parties to brief this issue. However, in light of the serious question as to the Court's jurisdiction over Plaintiff's MMWA claim, the Court declines to address the parties' substantive arguments on this claim until they have addressed the issue of subject matter jurisdiction.

## V.     FAILURE TO STATE A CLAIM

### A.     Matters Outside the Pleadings

A court may refer to evidence outside the pleadings in resolving jurisdictional issues

raised under Rule 12(b)(1). *See Krajisnik Soccer Club*, 2021 WL 2142924, at *2, 2021 U.S. Dist.

LEXIS 99456, at *5. But "[g]enerally, consideration of a motion to dismiss under Rule 12(b)(6)

is limited to consideration of the complaint itself," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.

2006), and "documents attached to the complaint as exhibits," *DiFolco v. MSNBC Cable L.L.C.*,

622 F.3d 104, 111 (2d Cir. 2010). However, considering "materials outside the complaint is not

entirely foreclosed on a 12(b)(6) motion." *Faulkner*, 463 F.3d at 134. A complaint "is deemed to

include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)

(quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "To be incorporated

by reference, the complaint must make a clear, definite and substantial reference to the

document[]." *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, No. 21-cv-9336, 2022 WL

4815615, at *20, 2022 U.S. Dist. LEXIS 181044, at *64 (S.D.N.Y. Sept. 30, 2022) (quoting

*McKeefry v. Town of Bedford*, 2019 WL 6498312, at *3, 2019 U.S. Dist. LEXIS 207874, at *7

(S.D.N.Y. Dec. 2, 2019)).

"Where a document is not incorporated by reference, the court may nevertheless consider

it where the complaint relies heavily upon its terms and effect, thereby rendering the document

integral to the complaint." *Nicosia*, 834 F.3d at 230 (quoting *DiFolco v.*, 622 F.3d at 111

(internal quotation marks omitted)). "Merely mentioning a document in the complaint will not

satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not

enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original). Rather,

the contents of a document must "appear to have been necessary to the 'short and plain statement

of the claim showing that [a plaintiff is] entitled to relief.'" *Lateral Recovery*, 2022 WL 4815615, at *20, 2022 U.S. Dist. LEXIS 181044, at *64 (alteration in original) (quoting *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008)). That is, "'[a] necessary prerequisite' to a finding that materials are integral to a complaint 'is that the "plaintiff[] rel[y] on the terms and effect of [the] document in drafting the complaint.'" *Id.*, 2022 WL 4815615, at *20, 2022 U.S. Dist. LEXIS 181044, at *65 (alteration in original) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)). However, even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

In support of its motion to dismiss, Defendant has attached copies of the three letters Plaintiff refers to in the Complaint: the August 2, 2005 letter from the FTC to the NTA, (Dkt. No. 10-2; *see* Dkt. No. 1, ¶¶ 16–18); the January 31, 2002 letter from the ATMI to the FTC, (Dkt. No. 10-3; *see* Dkt. No. 1, ¶¶ 20–21); and the March 18, 2002 letter from the FTC to the ATMI, (Dkt. No. 10-4; *see* Dkt. No. 1, ¶¶ 22–23). Plaintiff relies on these letters in support of her assertion that that the "common or standard practice in the United States bedding industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction)," counting "each yarn as one thread, regardless of whether the yarn was a single-ply or multi-ply yarn." (Dkt. No. 1, ¶¶ 7–8). Noting that these letters were written

"roughly 20 years ago," Defendant argues that "[n]one of this correspondence referenced and relied on in the Complaint demonstrates that the FTC ever promulgated a rule or regulation concerning the counting of threads—and certainly not anything mandating the use of the ASTM method." (Dkt. No. 10-1, at 9). As it appears that the parties dispute the relevance of these letters, the Court declines to consider them, and confines its review to the allegations in the Complaint. *See Faulkner*, 463 F.3d at 134 (explaining that "before materials outside the [complaint] may become the basis for a dismissal" "[i]t must . . . be clear that there is exist no material disputed issues of fact regarding the relevance of the document[s]").

### B.    New York General Business Law Sections 349 and 350

Section 349 of the New York General Business Law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." GBL § 349(a). Section 350, meanwhile, prohibits "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service." *Id.* § 350. Thus, GBL § 349 "involves unlawful deceptive acts and practices," while GBL § 350 "involves unlawful false advertising." *See Bardsley v. Nonni's Foods LLC*, No. 20-cv-2979, 2022 WL 814034, at *7, 2022 U.S. Dist. LEXIS 47104, at *19 (S.D.N.Y. Mar. 16, 2022). But both laws were "designed to protect consumers against deception and false advertising." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 323 (2002)). And "[t]he standard for recovery under [section] 350, while specific to false advertising, is otherwise identical to [s]ection 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (App. Div. 2010) (quoting *Goshen*, 98 N.Y.2d at 324 n.1). Thus, claims under these laws are analyzed together. *See MacNaughton*, 67 F.4th at 96. To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).

Defendant challenges the second and third prongs of Plaintiff's GBL claims, arguing that the Complaint fails to allege facts that allow a plausible inference that the "1250 thread count" representation is "materially misleading" and that Plaintiff fails to allege that she suffered any injury. (Dkt. No. 10-1, at 11–15). Plaintiff responds that she sufficiently alleges both that the thread-count represented on the label is materially misleading and that she suffered an injury by paying a premium price. (Dkt. No. 14, at 9–16).

### 1.       Materially Misleading

To plead deceptive or materially misleading acts or practices, a plaintiff must plausibly allege that a defendant's act or conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995); *see also Orlander*, 802 F.3d at 300. "Plausibility in this context 'demands "more than a sheer possibility that a defendant acted unlawfully"' and considers 'the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 580–81 (S.D.N.Y. 2021) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

In determining whether a product's advertising is misleading, courts must apply an "objective test," *see id.* at 581, and "context is crucial," *see Fink*, 714 F.3d at 742. That is, "[i]n determining whether a reasonable consumer would be misled, '[c]ourts view each allegedly misleading statement in light of its context [i]n the . . . advertisement as a whole.'" *See Bardsley*, 2022 WL 814034, at *7, 2022 U.S. Dist. LEXIS 47104, at *19–20 (quoting *Pichardo v. Only*

*What You Need, Inc.*, 20-cv-493, 2020 WL 6323775, at \*2, 2020 U.S. Dist. LEXIS 199791, at
\*4–5 (S.D.N.Y. Oct. 27, 2020)).

While it is well-settled that a court may determine at the motion to dismiss stage that an
allegedly deceptive misrepresentation would not have misled a reasonable consumer as a matter
of law, *see Colpitts*, 527 F. Supp. 3d at 581 (citing *Fink*, 714 F.3d at 741), such a determination
should be made sparingly "because the question of whether a representation is materially
misleading 'is generally a question of fact not suited for resolution at the motion to dismiss
stage,'" *see id.* (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y.
2020)).

The sheet set is labeled, in large font and in all capital letters as follows: "**1250
THREAD COUNT SHEET SET**." (Dkt. No. 1, ¶ 1). The parties debate "the common or standard
practice in the United States bedding industry." (*Compare* Dkt. No. 1, ¶ ¶ 7–23 (asserting
ASTM Standards discussing "method for determining thread count" require counting "warp ends
and filling picks as single units" without regard to ply); *with* Dkt. No. 10-1, at 9 (arguing there
"is no industry standard for counting threads, or a law or regulation mandating a particular
method")). However, the Oxford English Dictionary defines thread count, a noun, as:

> The number of threads in a given area of fabric, used as a measure
> of its coarseness or fineness. Frequently as a modifier, and preceded
> by qualifying number (with a higher number denoting a finer
> texture).

*Thread Count*, https://www.oed.com/dictionary/thread-
count_n?tab=meaning_and_use#991331427700 (last visited Feb. 26, 2024). It defines "thread," a
noun, in the context of "A cord, piece of yarn, or related uses," as:

> A fine cord composed of the fibres or filaments of flax, cotton, wool,
> silk, etc. spun to a considerable length; spec. such a cord composed
> of two or more yarns, esp. of flax, twisted together.

*Thread*, Oxford English Online Dictionary,

https://www.oed.com/dictionary/thread_n?tab=meaning_and_use#18628523 (last visited Feb.

26, 2024); *see also Thread*, Merriam-Webster Online Dictionary, https://www.merriam-

webster.com/dictionary/thread (last visited) (defining "thread" as "a filament, a group of

filaments twisted together, or a filamentous length formed by spinning and twisting short textile

fibers into a continuous strand").

    The Complaint alleges that "[l]aboratory analysis shows that the" sheet set has 57 warp

yarns and "each filament of each warp yarn . . . has 19 filaments." (Dkt. No. 1, ¶ 25). According

to the Complaint, the sheet set's "1250 thread count" is achieved by multiplying 57 warp yarns

by 19 filaments that comprise each warp yarn, equaling 1083, and then adding the 166 weft

yarns, for a total "thread count" of 1249. (*Id.*). Plaintiff asserts that if 57 warp yarns are added to

166 weft yarns, the total thread count equals 233. (*Id.* ¶ 26). Nothing on the sheet set's label

would alert the customer that the 19 filaments of the 57 warp yarns were used in calculating the

"1250 thread count," and thus it is plausible to infer that the "1250 thread count" was deceptive

and that a reasonable consumer would be materially mislead into believing that the "1250 thread

count" represented 1250 threads in a given area and would have no reason to believe that the 19

filaments that comprised each warp yarn were counted as "threads." *See Bruno v. Am. Textile*

*Co., Inc.*, No. 22-cv-2937, 2023 WL 6976826, at *2 (N.D. Ill. Oct. 23, 2023) (denying motion to

dismiss claim under Illinois consumer fraud statute, finding "that a reasonable consumer could

be deceived by Defendant's representation that the sheets . . . had a thread count of 1250,

explaining that "[t]he practice of counting each ply within the individual yarns instead of each

yarn creates a likelihood of confusion among consumers"); *see also Colpitts*, 527 F. Supp. 3d at

581 (concluding "Smokehouse" on almonds could mislead reasonable consumers, noting that

"front packaging . . . is labeled, in large font, with the word 'Smokehouse®,'" that

"'smokehouse' is a noun that describes a physical structure where food is prepared through the

process of using actual smoke," and that "nothing else on the front of the packaging would alert

consumers that the 'Smokehouse®' label refers only to the almonds' flavor"—not to the

flavoring process (citing *Smokehouse*, Oxford-English Online Dictionary)). Accordingly, the

Court concludes that the Complaint plausibly alleges that a reasonable consumer would be

materially mislead as to the thread count of the Product.

### 2. Injury

Defendant argues that Plaintiff's reliance on allegations of "subjective disappointment"

or "injury-by-deception" are insufficient to state a claim under the GBL. (Dkt. No. 10-1, at 15).

Plaintiff responds that she alleges injury based on price premium, specifically, that the Product

was "sold at a premium price," in this case $54.99, which was "higher than similar products,

represented in a non-misleading way." (Dkt. No. 14, at 14).

"An actual injury claim under [s]ection[s] 349 [and 350] typically requires a plaintiff to

allege that, on account of a materially misleading practice, she purchased a product and did not

receive the full value of her purchase." *Duran*, 450 F. Supp. 3d at 350 (internal quotation marks

omitted) (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)

(alterations in original). While "the New York Court of Appeals has rejected the idea that

'consumers who buy a product that they would not have purchased, absent a manufacturer's

deceptive commercial practices, have suffered an injury under General Business Law § 349,'"

*Goldemberg*, 8 F. Supp. 3d at 480–81 (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56

(1999)), a plaintiff can plead injury by alleging she paid a price premium, i.e., "that she was

exposed to a material deceptive act and relied on that misrepresented fact to her detriment,"

*Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 99 (S.D.N.Y. 2022). Indeed, it is well-

established that paying a premium for a product can constitute an actual injury under GBL § 349. *See*, *e.g.*, *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("A plaintiff adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations."). Moreover, "[a]lthough plaintiffs sometimes point to comparators in support of a price premium claim, a plaintiff is not required to do so in order to allege injury." *Duran*, 450 F. Supp. 3d at 352 (internal citation omitted) (citing, inter alia, *Goldemberg*, 8 F. Supp. 3d at 482).

      Plaintiff alleges that she purchased the sheet set for $54.99, and that she paid more for the sheet set than she would have had she known the "1250 thread count" statement on the label was false or misleading, or "would not have purchased it." (Dkt. No. 1, ¶¶ 31, 49–50). While thin, Plaintiff's allegations that she paid "more . . . than she would have had she known" that the thread count was not 1250, but 233, or would not have purchased it, (*id.* at 50), are sufficient to allege injury. *See Goldemberg*, 8 F. Supp. 3d at 482 (finding allegations that the plaintiff paid a premium price for, or would not have purchased, an Aveeno product labeled "Active Naturals" had it been "truthfully advertised and labeled" sufficiently alleged injury for purposes of stating a GBL § 349 claim, explaining that "while identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury the failure to do so is not fatal to Plaintiff's claim"); *see Ebin v. Kangadis Food Inc.*, No. 13-cv-2311, 2013 WL 6504547, at *5, 2013 U.S. Dist. LEXIS 174174, at *12 (S.D.N.Y. Dec. 11, 2013) (finding the plaintiffs' allegations that they paid a price premium for the defendant's "mislabeled Pomace" allowed plausible inference of injury, explaining that "[t]he deception is the false and misleading label, and the injury is the purchase price"); *see also Small v. Lorillard Tobacco Co.*, Inc., 94 N.Y.2d 43, 56 n.5 (1999) ("[P]laintiff might have a claim where a distributor asserts that its bottled water

is from a pure and pristine mountain stream while in reality, it was only tap water.").

Accordingly, Defendant's motion to dismiss the GBL §§ 349 and 350 claims is denied.

### C.   Consumer Fraud Acts of Texas, South Dakota, Alaska, Virginia, North Carolina, and South Carolina

#### 1.   Failure to State a Claim

Defendant next argues that "[g]iven the absence of plausible allegations of deception, Plaintiff's remaining claims" under the consumer fraud acts of Texas, South Dakota, Alaska, Virginia, North Carolina, and South Carolina, "which are similarly premised on the unsupported assertation that [Defendant's] labeling is materially misleading, also should be dismissed." (Dkt. No. 10-1, at 16). The Court previously found that Plaintiff adequately alleged deception, and as Defendant does not identify any other basis for dismissal, Defendant's motion to dismiss the Texas,  South Dakota, Alaska, Virginia, North Carolina, and South Carolina consumer fraud act claims are also denied.

#### 2.   Personal Jurisdiction

Defendant moves for dismissal of the multi-state claims for lack of personal jurisdiction. (Dkt. No. 10-1, at 17) (arguing that the Court "lacks [personal] jurisdiction over ATC to adjudicate any claims purportedly raised the Complaint other than those concerning ATC's New York conduct specifically"). Plaintiff opposes dismissal, arguing that the Court should defer any determination regarding personal jurisdiction until the class certification stage. (Dkt. No. 14, at 17). The Court agrees.

Defendant maintains that as it was incorporated, and has its principal place of business, in Pennsylvania, (Dkt. No. 1, ¶ 35), "this Court does not have general, all-purpose personal jurisdiction over ATC," (Dkt. No. 10-1, at 17). Indeed, as the Supreme Court explained in *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), "[w]ith respect to a corporation, the place of

incorporation and principal place of business are paradigm bases for general jurisdiction."
(Internal quotation marks, citation, and alterations omitted). Thus, "[i]n order for [this] court to
exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts
with the forum.'" *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 262
(2017) (quoting *Daimler*, 571 U.S. at 127). In *Bristol-Myers Squibb*, the Supreme Court held that
because the plaintiffs were "not California residents" and did "not claim to have suffered harm in
that State," it followed that California courts could not "claim specific jurisdiction" over the
defendant, a company incorporated in Delaware and headquartered in New York. 582 U.S. at
1777, 1782. However, observing that its decision concerned the Fourteenth Amendment's "due
process limits on the exercise of specific jurisdiction by a State," the Supreme Court left "open
the question whether the Fifth Amendment imposes the same restriction on the exercise of
personal jurisdiction by a federal court" *id.* at 1783–84, as well as the question whether its
opinion "would . . . apply to a class action in which a plaintiff injured in the forum State seeks to
represent a nationwide class of plaintiffs, not all of whom were injured there," *id.* at 1789 n.4
(Sotomayor, J., dissenting).

At present, it appears there is no basis for personal jurisdiction in this New York federal
court over Defendant, a Pennsylvania corporation, in connection with potential claims that arose
in Texas, South Dakota, Alaska, Virginia, North Carolina, and South Carolina by potential class
members in those states. However, like other courts confronting this issue at the motion-to-
dismiss stage, the Court defers decision on personal jurisdiction pending certification of a multi-
state class. *Hawkins v. Well Path, LLC*, No. 19-cv-8969, 2020 WL 4287447, at *6, 2020 U.S.
Dist. LEXIS 132137, at *14 (S.D.N.Y. July 27, 2020) ("[A]t present, the potential out-of-state
class members are precisely that—potential class members who are not, and may never be,

joined in this action. Thus, the Court need not assess at this time personal jurisdiction over

defendant as to putative out-of-state class action claims."); *Rothschild v. Gen. Motors LLC*, No.

19-cv-05240, 2020 WL 13581659, at *15, 2020 U.S. Dist. LEXIS 187300, at *43 (E.D.N.Y.

Sept. 30, 2020) ("At this juncture, the Court need not determine the applicability of *Bristol-*

*Myers Squibb* because Plaintiff has not moved to certify a nationwide class."); *Gonzalez v.*

*Costco Wholesale Corp.*, No. 16-cv-2590, 2018 WL 4783962, at *8, 2018 U.S. Dist. LEXIS

171000, at *23 (E.D.N.Y. Sept. 29, 2018) ("[T]his court will defer its resolution of this issue

until Plaintiff files a motion for class certification."). Accordingly, Defendant's motion to

dismiss the State Consumer Fraud Act claims for lack of personal jurisdiction is denied without

prejudice to renewal.

### D.      Breach of Express Warranty

Defendant argues that Plaintiff's claim for breach of express warranty should be

dismissed because Plaintiff failed to give notice of a breach of warranty to Defendant. (Dkt. No.

10-1, at 21). Plaintiff argues that notice is not required for retail sales, or, in the alternative, that

Plaintiff has provided notice to Defendant through filing the instant action.[5] (Dkt. No. 14, at 19–

20).

"An express warranty is an 'affirmation of fact or promise made by the seller to the buyer

which relates to the goods and becomes part of the basis of the bargain.'" *Dwyer*, 598 F. Supp.

3d at 155 (quoting N.Y. U.C.C. § 2-313(1)(a)). To state a claim for breach of an express

---

[5] Plaintiff also alleges that "Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums." (Dkt. No. 1, ¶ 74). This allegation is insufficient to plead notice because it "would not constitute notice by the buyer," as required by New York law. *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 155 (S.D.N.Y. 2022) ("The plain language of N.Y. U.C.C. § 2-607(3)(a) makes clear that '*the buyer* must notify the seller of breach or be barred from any remedy.' Therefore, [p]laintiff *herself* was required to notify [defendant] of the alleged breach before bringing the claim herein." (alterations in original) (quoting *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 245 (S.D.N.Y. 2021))).

warranty under New York law, a plaintiff must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (quoting *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 249 (S.D.N.Y. 2021)). Additionally, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See* N.Y. U.C.C. § 2-607(3)(a); *see also Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) ("[I]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'" (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013))). Furthermore, "timely notice is a condition *precedent* to bringing an action for breach of warranty." *Lugones*, 440 F. Supp. 3d at 245 (emphasis in original) (citation omitted). And while there are contexts in which the notice requirement does not apply, those contexts are limited to instances in which a party alleges that a product sold at retail causes physical injury in addition to economic injury or where the product is intended for human consumption. *See Dwyer*, 598 F. Supp. 3d at 155 ("Plaintiff's contention that the notice requirement does not apply to retail sales does not save her claim; even the cases that adopt that minority view do so only 'when a party alleges physical, in addition to economic, injury.'" (quoting *Colpitts*, 527 F. Supp. 3d at 589)); *Tomasino v. Estee Lauder Cos., Inc.*, No. 13-cv-4692, 2015 WL 4715017, at *4, 2015 U.S. Dist. LEXIS 103991, at *9 (E.D.N.Y. Aug. 7, 2015) ("[T]he [notice] exception does not apply to the present case, however, because the exception has been applied in cases involving products for human consumption, particularly those that are edible."); *see also Lugones*, 440 F. Supp. 3d at 245 ("The Court agrees with its sister courts'

analysis of the New York cases regarding this exception, and finds that it is inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach.").

Here, Plaintiff's argument that notice of the alleged breach of warranty was not required is without merit. Plaintiff cites *Gavilanes v. Gerber Products Co.*, No. 20-cv-5558, 2021 WL 5052896, at *7, 2021 U.S. Dist. LEXIS 210566, at *16–17 (E.D.N.Y. Nov. 1, 2021), for the proposition that "notice requirements for breaches of warranty have long been jettisoned in New York state." (Dkt. No. 14, at 20). But *Gavilanes* involved a product intended for human consumption—a milk-based powder marketed for twelve- to twenty-four-month-old children. *Id.*, 2021 WL 5052896, at *1, 2021 U.S. Dist. LEXIS 210566, at *1–2.[6] Plaintiff does not cite any case that suggests the notice exception for breaches of warranty has been or should be extended to claims involving a product not intended for human consumption. Nor has Plaintiff alleged any physical injury associated with the alleged breach of warranty. Thus, no notice exception for breach of warranty applies, and Plaintiff was required to give notice of Defendant's alleged breach of warranty.

Even so, Plaintiff argues, the filing of the present suit provided the requisite notice. (Dkt. No. 14, at 20). In support of this argument, Plaintiff relies on *Tomasino v. Estee Lauder Cos. Inc.*, which noted that "New York cases applying N.Y. U.C.C. § 2–607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases." 44 F. Supp. 3d 251, 261 n.6 (E.D.N.Y. 2014). But the court in *Tomasino* nevertheless found that the plaintiff's delay of "two to three years" in sending the defendant "a formal demand letter" before commencing her

---

[6] Furthermore, *Gavilanes* relies on a case involving another product for human consumption—cigarettes, *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *1, 2000 U.S. Dist. LEXIS 22223, at *2 (N.D.N.Y. Sept. 28, 2000)—which itself relies on a case involving yet another product for human consumption—oral contraceptive pills, *Fischer v. Mead Johnson Lab'ys*, 341 N.Y.S.2d 257, 258 (App. Div. 1973).

lawsuit "constituted unreasonable delay" in providing the defendant with notice of the alleged breach of warranty. *Id.* at 261. And the case on which *Tomasino* relies for the proposition that pleadings may constitute reasonable notice in certain circumstances, *Panda Capital Corp. v. Kopo International, Inc.*, itself found that the plaintiff had "repeatedly made objections to [the defendant]'s pattern of deficient performance" prior to filing its lawsuit. 662 N.Y.S.2d 584, 586 (App. Div. 1997). Thus, *Tomasino* and *Panda Capital* stand not for "the broad rule that a filed complaint qualifies as sufficient and timely notice," or that a "filed complaint, regardless of its temporal distance from the alleged breach of warranty, satisfies N.Y. U.C.C. § 2-607(3)(a)," but instead for the proposition that "timely notice is a condition *precedent* to bringing an action for breach of warranty . . . [and] [p]laintiffs must allege some form of timely, pre-litigation notice." *Lugones*, 440 F. Supp. 3d at 244–45 (emphasis in original) (citations omitted); *see also MacNaughton*, 67 F.4th at 100–01 ("[I]n order to asse[r]t a claim for breach of an express or implied warranty under New York law, 'a buyer must provide the seller with timely notice of the alleged breach.' . . . The district court therefore did not err in concluding that [the plaintiff] failed to provide [the defendant] with the requisite pre-suit notice under N.Y. U.C.C. § 2-607(3)(a)." (second alteration in original) (quoting *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 282 (S.D.N.Y. 2021))); *Lumbra v. Suja Life, LLC*, No. 22-cv-893, 2023 WL 3687425, at *7, 2023 U.S. Dist. LEXIS 92309, at *19 (N.D.N.Y. May 26, 2023) ("Plaintiff relies on [*Tomasino*] for th[e] proposition [that filing an action serves as notice of an alleged breach of warranty] and thus the Court will not apply an exception that is inapplicable to the facts of this case.").

Here, Plaintiff alleges she purchased the Product "between January 2021 and January 2022" and filed this action on December 1, 2022. (Dkt. No. 14, at 20 (citing Dkt. No. 1, ¶ 45)). Plaintiff alleges in the Complaint she "provided or provides notice to Defendant . . . that it

breached the Product's warranties." (Dkt. No. 1, ¶ 73). The Complaint fails to allege when Plaintiff discovered the Product was deficient and notified Defendant. These allegations are therefore insufficient to establish that Plaintiff provided timely notice of the alleged breach of warranty. *See MacNaughton*, 67 F.4th at 100–01. Accordingly, Plaintiff's claim for breach of express warranty is dismissed.

### E.    Breaches of Implied Warranties

Defendant argues that Plaintiff's claims for breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose are also barred by Plaintiff's failure to give pre-suit notice of the alleged breaches. The Court agrees. As with a claim for breach of express warranty, timely notice of an alleged breach is necessary to assert a claim for breach of an implied warranty under New York law. *See MacNaughton*, 67 F.4th at 100. As discussed with regard to Plaintiff's claim for breach of express warranty, Plaintiff provided no pre-suit notice of the alleged breach of either implied warranty. Accordingly, Plaintiff's claims for breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose are dismissed.

### F.    Fraud

Defendant argues that Plaintiff's claim for fraud under New York common law should be dismissed because Plaintiff has not pleaded her claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and has not plausibly alleged fraudulent intent. (Dkt. No. 10-1, at 23–24). Plaintiff responds that she has pleaded her claim for fraud with the particularity required by Rule 9(b). (Dkt. No. 14, at 21–22).

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and

(5) which caused injury to the plaintiff." *Valcarcel*, 577 F. Supp. 3d at 280 (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402-03 (2d Cir. 2015)). A claim for common-law fraud is subject to the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which require that the complaint "state with particularity the circumstances constituting fraud." *Id.* at 280–81 (quoting Fed. R. Civ. P. 9(b)); *see also MacNaughton*, 67 F.4th at 99. Specifically, Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 286–87 (S.D.N.Y. 2022) (quoting *Fin. Guar. Ins. Co.*, 783 F.3d at 403); *MacNaughton*, 67 F.4th at 99. While "Rule 9(b) permits scienter to be averred generally," the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *Id.* at 281 (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017)). A "'strong inference' can be established either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* (quoting *Duran*, 450 F. Supp. 3d at 353).

Here, Plaintiff alleges that Defendant labeled the sheet set has having a "1250 thread count," but that it only had a thread count of 233. (Dkt. No. 1, ¶¶ 1, 25). Thus, Plaintiff has sufficiently detailed the statement she contends is fraudulent and why it is fraudulent and has identified Defendant as the speaker. Plaintiff further alleges that she purchased at least one sheet set at "Big Lots" in Newburgh, New York, between January 2021 and January 2022, (id. ¶ 45), and thus sufficiently alleges where and when the statements were made. *Marino v. Coach, Inc.*,

264 F. Supp. 3d 558, 567 (S.D.N.Y. 2017) (finding the plaintiffs had satisfied Rule 9(b) where "[e]ach of the four named Plaintiffs alleges . . . the location at which the item was purchased[] [and] the approximate date of the purchase"); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 470–71 (E.D.N.Y. 2013) (finding the plaintiff adequately alleged "the 'who, what, where, when, and how' of the asserted fraud" where the plaintiff alleged "she is a citizen of Los Angeles County, California who purchased Ester–C from Ralphs and Whole Foods stores on several occasions in 2011," and identified "the particular representations made by defendants alleged to be false" as well as "why and how defendants' misrepresentations deceive consumers"); *Jovel v. i-Health, Inc.*, No. 12-cv-5614, 2013 WL 5437065, at *11, 2013 U.S. Dist. LEXIS 139661, at *33–34 (E.D.N.Y. Sept. 27, 2013) (finding "ample particularization of [the plaintiff's] allegations" where the plaintiff identified "where the allegedly fraudulent statements were made, namely, at a particular Wal-Mart in Los Angeles," and "the specific time when she purchased [the product]").

Defendant argues that Plaintiff's "conclusory statements" regarding fraudulent intent are "insufficient to meet the particularity requirements of Rule 9(b)." (Dkt. No. 10-1, at 24). Plaintiff responds that even if she "does not 'allege sufficient facts to 'give rise to a strong inference of fraudulent intent,'" Rule 9(b) "permits scienter to 'be alleged generally.'" (Dkt. No. 14, at 22).

As the Second Circuit has explained, "although Rule 9(b) permits knowledge to be averred generally, we have repeatedly required plaintiffs 'to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent.'" *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). Other than her assertion that scienter may be alleged generally, (Dkt. No. 14, at 22), Plaintiff has not responded to Defendant's argument regarding fraudulent intent. Moreover, there are no facts alleged in the Complaint giving rise to a strong inference of fraudulent intent.

Although the Complaint alleges that Defendant's thread count was inconsistent with the "industry standard," the allegations on this score consist of definitions from ASTM, a global standards organization, and letters from 2002 to 2005 between the FTC and a textiles association and textiles institute. (Dkt. No. 1, ¶¶ 7–23). However, as there are no allegations that Defendant was aware of, or required to follow, ASTM standards, or the correspondence with the FTC, or that it knew the "1250 thread count" was calculated by counting the 19 filaments in each warp yarn, the Court finds Plaintiff has failed to allege fraudulent intent. *See In re Frito–Lay North Am., Inc. All Nat. Litig.*, 12-md-2413, 2013 WL 4647512, at *26, 2013 U.S. Dist. LEXIS 123824, at *81–82  (E.D.N.Y. Aug. 29, 2019) (rejecting the plaintiffs' argument that the defendant had displayed "conscious misbehavior or recklessness" where the "plaintiffs never allege[d] that Frito–Lay knew the products contained genetically modified corn" and, "[w]ithout knowledge of falsity, Frito–Lay could not have intended to defraud [the] plaintiffs"); *cf. Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 73–74 (E.D.N.Y. 2017) (finding allegations that the defendant "was aware that its statements were false, not only because Defendant sponsored the Lowe Study, whose results did not support Defendant's health claims, but also because Defendant had corresponded with the FDA about how to circumscribe and cabin the health claims to avoid deceiving consumers"). Accordingly, Defendant's motion to dismiss Plaintiff's fraud claim is granted.

### G.    Unjust Enrichment

Defendant argues that the unjust enrichment claim should be dismissed because Plaintiff "has failed to explain how the claim is not merely duplicative of [her] other causes of action." (Dkt. No. 10-1, at 24).  Plaintiff appears to acknowledge that her unjust enrichment claim is duplicative of other claims but argues that Rule 8(d)(2) of the Federal Rules of Civil Procedure allows her to plead alternative claims regardless of consistency. (Dkt. No. 11, at 20.)

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Valcarcel*, 577 F. Supp. 3d at 283 (quoting *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021)). Where an "unjust enrichment claim 'sound[s] in fraud[,]'" a plaintiff "must satisfy th[e] heightened pleading standard" provided by Rule 9(b). *See MacNaughton*, 67 F.4th at 99 (first alteration in original) (quoting *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022)). Furthermore, "unjust enrichment is not a catchall cause of action to be used when others fail." *Valcarcel*, 577 F. Supp. 3d at 283 (quoting *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021)). That is, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). While Rule 8(d)(2) of the Federal Rules of Civil Procedure allows alternative pleading, even when "pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *see also Valcarcel*, 577 F. Supp. 3d at 283 ("[A]n unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" (quoting *Campbell*, 516 F. Supp. 3d at 393)).

Here, Plaintiff's claim for unjust enrichment is limited to a single paragraph, which states that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Dkt. No. 1, ¶ 80). Thus, it is clear

that Plaintiff's unjust enrichment claim "is a mere repackaging" of her other claims based on

Defendant's alleged misrepresentations about thread count because the claim relies on the same

factual allegations as Plaintiff's other theories of recovery without explanation as to how it may

differ. *See Warren*, 592 F. Supp. 3d at 287 (quoting *Campbell*, 516 F. Supp. 3d at 394); *see also*

*Valcarcel*, 577 F. Supp. 3d at 283 ("Here, [the plaintiff] has offered no explanation of how its

unjust enrichment claim differs from its other causes of action, 'which seek relief from the same

conduct.' As such, the motion to dismiss [the plaintiff]'s unjust enrichment claim is granted."

(quoting *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, No. 13-md-2450, 2015 WL 7018369, at

*39, 2015 U.S. Dist. LEXIS 155383, at *109 (S.D.N.Y. Nov. 12, 2015))). Additionally, as

discussed with regard to her claim for fraud, Plaintiff has not pleaded fraudulent intent

sufficiently, as she must where, as here, her unjust enrichment claim sounds in fraud, *see*

*MacNaughton*, 67 F.4th at 99. Accordingly, Plaintiff's claim for unjust enrichment is dismissed.[7]

---

[7] Plaintiff's counsel, Attorney Sheehan, also represents the plaintiff in *Smith v. Adidas Am. Inc.*, No. 22-cv-788 (BKS/ML) (N.D.N.Y. filed July 26, 2022). The breach of express and implied warranty and unjust enrichment claims asserted in *Smith* suffered from the same defects identified herein. *See Smith v. Adidas Am., Inc.*, No. 22-cv-788, 2023 WL 5672576, at *7–9, 2023 U.S. Dist. LEXIS 155009, at *22–27 (N.D.N.Y. Sept. 1, 2023). Specifically, the Court found the plaintiff failed to allege notice with respect to the warranty claims and the unjust enrichment claims were duplicative of other claims. *Id.*, 2023 WL 5672576, at *7–9, 11–12, 2023 U.S. Dist. LEXIS 155009, at *22–27, 34–36. Had Attorney Sheehan had the benefit of the Court's decision in *Smith*, perhaps the memorandum of law he filed in opposition to Defendant's motion in this case would not have included identically-worded arguments. Attorney Sheehan is thus now on notice that such claims are insufficient, and the continued filing of similarly unsupported, frivolous claims, will not be tolerated and may be found to violate his obligations under Rule 11 of the Federal Rules of Civil Procedure. Indeed, Attorney Sheehan, who has filed multiple actions Northern District of New York alone, is well aware that his litigation conduct is moving him precariously close to sanctions for misconduct. *See Brownell*, 2023 WL 9053058, at *9, 2023 U.S. Dist. LEXIS 231526, at *27–28 (finding Attorney Sheehan acted in bad faith in filing "complaint without any studies, relevant caselaw, or reasonable interpretations of the wording on the Product label to support the allegations contained within," holding Attorney Sheehan in contempt, and reserving decision on sanctions); *see also Van Orden v. Hikari Sales U.S.A., Inc.*, No. 22-cv-504 (MAD/DJS), 2023 WL 5336813, at *9, 2023 U.S. Dist. LEXIS 144927, at *26–27 (N.D.N.Y. Aug. 18, 2023) ("Mr. Sheehan has been warned on repeated occasions regarding his practice of filing lawsuits where the theory of the case was not close to viable, yet he continues to do so, undoubtedly because the cases that do settle are sufficiently lucrative that he is willing to provoke the ire of the judiciary.").

### H.       Leave to Amend

In the alternative to the denial of Defendant's motion to dismiss, Plaintiff seeks leave to file an amended complaint. (Dkt. No. 14, at 22). The Federal Rules of Civil Procedure provide that "leave to amend 'shall be freely given when justice so requires.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)). However, "leave to amend may be denied if . . . amendment would be futile." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)). "Amendment is futile if it fails 'to cure prior deficiencies.'" *Id.* (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Plaintiff has not suggested how she would amend the complaint and the Court is skeptical as to whether Plaintiff will be able to correct most of the deficiencies identified in this decision. However, in light of the fact that Plaintiff has requested leave to amend and has not yet had an opportunity to amend, the Court will permit amendment of the complaint.

## VI.      CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 10) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 10) is **GRANTED** as to Plaintiff's breach of express warranty, breach of implied warranty, fraud, and unjust enrichment claims, and those claims are **DISMISSED without prejudice**; and it is further

**ORDERED** that to the extent Plaintiff seeks to proceed on her MMWA claim, Plaintiff is directed to file a letter brief not to exceed 5 pages within 21 days of the date of this Memorandum-Decision and Order, stating why her MMWA should not be dismissed. Defendant

may file a letter brief in response by 14 days after the filing of Plaintiff's letter brief. If Plaintiff

fails to file a letter brief, the MMWA claim will be dismissed without further Order. It is further

       **ORDERED** that Defendant's motion to dismiss (Dkt. No. 10) is otherwise **DENIED;**

and it is further

       **ORDERED** that any amended complaint must be filed within 21 days of the date of this

Memorandum-Decision and Order.

       **IT IS SO ORDERED.**

Dated: February 27, 2024
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge